**In re LAWSON TRUCKING CO., INC., Debtor.**

**Bankruptcy No. 8300246.**

United States Bankruptcy Court, D. Rhode Island.

Jan. 8, 1986.

Paula Bonnell, Dept. of Justice, Boston, Mass., for U.S. Trustee.

Sheldon Scoliard, Halpert & Scoliard, Providence, R.I., for debtor.

Richard M. Pierce, Roberts, Carroll, Feldstein & Tucker, Providence, R.I., for Trustees of New England Teamsters and Trucking Industry Pension Fund, and for Trustees of Teamsters Local 251 Health Services and Ins. Plan.

ORDER GRANTING UNITED STATES TRUSTEE'S MOTION TO CONVERT CASE TO CHAPTER 7

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

After hearing on August 9, 1985, the parties submitted proposed findings of fact and conclusions of law[1] regarding a motion to convert filed by the United States Trustee, pursuant to 11 U.S.C. § 1112. Upon consideration of the entire record, we are in general agreement with the proposed findings of fact submitted by

---

**1.** The proposed findings of fact and conclusions of law submitted by Lawson Trucking Co., Inc. are totally without support and are rejected,

with the exception of findings of fact numbered 2, 3, and 7.

the United States Trustee,[2] which we adopt as the findings of this Court, as modified and in the form attached hereto as Exhibit A. With respect to the United States Trustee's proposed conclusions of law,[3] we adopt those in substantial part, as follows:

1. Edward G. Lawson, Jr., Lawson Crane Service, Inc. (LCS), Lawson Machinery Transport, Inc. (LMT), and Lawson Realty Corporation (LRC) are insiders within the meaning of 11 U.S.C. § 101(28).

2. In this Chapter 11 case which has been pending since April 1, 1983, the debtor has generated no income for the benefit of unsecured creditors.

3. Income which has been generated by LMT has been paid to a secured creditor, First Bank & Trust Co. (FBT), to reduce insider liability.

4. Receivables are due the debtor from insiders, for which a proper accounting has not been made, and which have not been properly pursued by LTC or its officers.

5. The actions and conduct of the debtor, its officers and agents in failing to propose a plan of reorganization has caused unreasonable delay that has been prejudicial to creditors.

6. The debtor and its officers have failed to act in good faith to propose a plan of reorganization. Put more plainly, they have acted in bad faith throughout this proceeding.

7. The intentional delaying actions of the debtor and its officers have resulted in a continuing loss or diminution of the estate and the unlikelihood of rehabilitation.

8. The above described actions require the appointment of a Chapter 7 trustee to inquire into the conduct of the debtor and its officers during the pendency of the case.

■ Based upon the findings and conclusions made and adopted herein, the United States Trustee's motion to convert this case from Chapter 11 to Chapter 7 is granted. In authorizing the appointment of a trustee, we also point out that if, after investigation, the trustee has reasonable grounds to believe that there has been a violation of any law of the United States relating to insolvent debtors, receiverships, or reorganization plans, or that an investigation should be conducted in connection therewith, he/she should so report to the United States Attorney, as required by 18 U.S.C. § 3057.

EXHIBIT A

UNITED STATES TRUSTEE'S PROPOSED FINDINGS OF FACT AS MODIFIED AND ADOPTED BY THE COURT

1. On or about March 14, 1983, upon the petition of Edward G. Lawson, Jr., a temporary receiver was appointed for Lawson Trucking Company, Inc. (LTC) by the Rhode Island Superior Court for Providence County (PM 83–1048). Exhibit 5.

2. Thereafter, on April 1, 1983 an involuntary Chapter 7 petition was filed against LTC by Trustees of the Teamsters Local 251 Health Services and Insurance Plan, Trustees of the New England Teamsters and Trucking Industry Pension Fund, and International Brotherhood of Teamsters, Local Union 251.

3. Upon motion of the Debtor the case was converted to a Chapter 11 proceeding on April 8, 1983.

4. LTC had operated for a number of years prior to this proceeding as a machinery rigging company, with its principal

---

**2.** In support of its motion to convert, the United States Trustee has adopted the findings of fact and conclusions of law proposed by Trustees of the New England Teamsters and Trucking Industry Pension Fund and Trustees of the Teamsters Local 251 Health Services and Insurance Plan, the largest unsecured creditors in this case.

**3.** Notwithstanding our negative impression of the debtor and those connected with it, we have not adopted the United States Trustee's proposed conclusions of law pertaining to voidable preferences under 11 U.S.C. § 547 and fraudulent transfers under 11 U.S.C. § 548, since it would be inappropriate to make such conclusions, without hearing, on allegations which are not the subject of the instant motion.

place of business at 42 Samuels Avenue, Pawtucket, Rhode Island.

5. Edward G. Lawson, Jr., has been, at all relevant times, President and sole shareholder of LTC, with direct management responsibility for the operations of that corporation.

6. On or about January 25, 1983, Lawson Crane Service, Inc. (LCS) was incorporated in the State of Rhode Island. Exhibit 7.

7. Edward G. Lawson, Jr., was then and is now an officer of LCS. His wife, Doris P. Lawson, was then and is now an officer and sole shareholder of LCS.

8. On or about January 27, 1983, Lawson Machinery Transport, Inc. (LMT) was incorporated as a Rhode Island corporation. Exhibit 6.

9. Edward G. Lawson, Jr., was then and is now an officer and major shareholder of LMT. Exhibit 2, Answer No. 1.

10. LMT conducted no business prior to March 14, 1983.

11. On March 14, 1983, LMT rented all machinery and equipment owned by LTC from the State Court Receiver.

12. LMT has continued during this Chapter 11 proceeding to rent the machinery and equipment of LTC.

13. No written lease between LTC and LMT has ever been executed.

14. LMT is a machinery rigging company similar to LTC.

15. LMT has been charged $180.50 per business day for equipment rental during the Chapter 11 proceeding.

16. As of July 31, 1985, LMT owed to LTC $16,337.42 for unpaid equipment rental charges.

17. Much of the rental income due to LTC in amounts ranging from $2,000 to $3,500 per month was paid by LMT directly to First Bank and Trust Company (FBT), a secured creditor of LTC.

18. Accurate books of account and records for LTC have not been maintained during this Chapter 11 proceeding.

19. Edward G. Lawson, Jr., was a personal guarantor on the debt of LTC to FBT.

20. Lawson Realty Corporation (LRC) was also a guarantor or co-maker on the debt of LTC.

21. The obligation of LRC was secured by a mortgage on the real estate owned by LRC at 42 Samuels Avenue, Pawtucket, Rhode Island.

22. Edward G. Lawson, Jr., is an officer and shareholder of LRC.

23. LMT first made payment to its employees for the week of March 19, 1983.

24. Most of the former employees of LTC were hired by LMT on March 14, 1983 and continued to work thereafter, with no apparent break in employment.

25. In at least 18 instances, LTC accounts receivable ledger cards, although having no outstanding balance due on March 14, 1983, were used by LMT for transactions subsequent to that date.

26. In at least one instance, a receivable due to LTC from Cabco Engineering in the amount of approximately $4,000 was collected by LMT.

27. In at least five instances, charges for work performed prior to March 14, 1983 (totalling $20,497.22), were billed and collected by LMT, on its invoices.

28. In addition, 25 other customers serviced by LTC prior to March 14, 1983 were serviced by LMT subsequent to March 14, 1983.

29. On March 14, 1983, LMT began operating from the premises previously occupied by LTC at 42 Samuels Avenue, Pawtucket, Rhode Island.

30. Since March 14, 1983, LMT has used the telephone number listed to LTC prior to that date.

31. On January 31, 1983, LTC transferred a 1975 Grove 50 Ton Hydraulic Crane to LCS for an amount equal to the book value as shown on books of LTC as of that date.

32. The consideration from LCS to LTC was

a. The assumption of an installment loan to E.F. Hutton Credit Co. in the amount of $42,465 and

b. A promissory note for the balance of $24,156 which amount "may be offset with rental charges to Lawson Trucking Company." *See* bill of sale which is an attachment to Exhibit 2.

33. No written appraisal of the market value of the crane was obtained by either LTC or LCS at the time of the transfer.

34. Rental of the crane by LTC prior to the transfer and by LCS after the transfer was a profitable aspect of the business of each corporation.

35. On or about January 28, 1983, LTC transferred a 1979 Datsun 280ZX automobile to Edward G. Lawson, Jr., as payment for loans from Lawson to LTC and in reimbursement for furniture sold by Edward G. Lawson, Jr., to LTC. *See* bill of sale which is attachment to Exhibit 2.

36. The sale price of the Datsun automobile was equivalent to the book value of the vehicle as carried on the general ledger of LTC. Exhibit 8.